IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **NICHOLAS SUOZZO,** | : | |
| Petitioner, | : | |
| | : | **CRIM. ACTION NO. 13-381** |
| v. | : | |
| | : | **CIVIL ACTION NO. 15-5775** |
| **UNITED STATES OF AMERICA,** | : | |
| Respondent. | : | |
| | : | |

## MEMORANDUM

**Tucker, C.J.**                                                                 **August 10, 2016**

Presently before this Court is Petitioner's Motion to Vacate, Set Aside, or Correct

Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 50), the Government's response (Doc.

53), and Petitioner's reply (Doc. 56). Petitioner states two grounds for relief: (1)

he was denied effective assistance of trial counsel when his attorney did not object to two

erroneous guideline enhancements and when his attorney did not attend his presentencing

interview; and (2) that his plea was not knowing, intentional, and voluntary because his offense

level and resulting sentencing guideline were improperly calculated. The Government requests

that the Court deny Petitioner's Motion because Petitioner waived his right to make his claims

when he entered into a plea agreement. Further, on the merits, the Government contends that no

error was made and counsel was not ineffective. Upon consideration of the parties' submissions

and exhibits and for the reasons set forth below, the Court DENIES Petitioner's Motion.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 7 and 12, 2013, Petitioner Nicholas Suozzo ("Petitioner" or "Suozzo") sold

marijuana to an undercover police officer from his home located at 2643 East Thompson Street,

Philadelphia, PA 19125, within 1,000 feet of Stephen A. Douglas High School. On March 14, 2013, law enforcement executed a court-authorized search and seizure warrant of Petitioner's home. Officers recovered additional quantities of marijuana, marijuana plants, five improvised explosive devices ("IEDs"), and approximately ten firearms, several of which were without serial numbers or found in proximity to narcotics.

Petitioner was charged with nine counts stemming from these incidents. Indict., Doc 1. In Counts One, Two, Three, and Four, the indictment alleged that for each date Petitioner sold marijuana to the police, he was guilty of distributing a mixture and substance containing marijuana within 1,000 feet of a school. *Id.* at 1–4; *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(D), 860(a). In Counts Five and Six, the indictment alleged that for the date that Petitioner's home was searched, he was guilty of possession with the intent to distribute marijuana within 1,000 feet of a school. *Id.* at 5–6; *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(D), 860(a). In Count Seven, the indictment alleged that Petitioner was guilty of knowingly possessing three firearms in furtherance of a drug trafficking crime. *Id.* at 7; *see* 18 U.S.C. § 924(c)(1)(A). In Count Eight, the indictment alleged that Petitioner was guilty of knowingly possessing three firearms not identified by serial numbers. *Id.* at 8; *see* 26 U.S.C. §§ 5845(a)(3), (a)(6), (a)(5)(e) and 5861(i). In Count Nine, the indictment alleged that Petitioner was guilty of knowingly possessing five IEDs not registered to him in the National Firearms Registration and Transfer Record. *Id.* at 9; *see* 26 U.S.C. §§ 5845(a)(8), and 5861(d).

On March 6, 2014, at a change of plea hearing, the Court accepted Petitioner's guilty plea on Counts Two, Four, Six, Seven, Eight and Nine. In accordance with a plea agreement between Petitioner and the Government, the Government dismissed Counts One, Three, and Five. Change of Plea Tr. at 3–4, Doc. 48.

2

On March 11, 2014, an officer from the United States Probation Office for the Eastern District of Pennsylvania ("Probation") conducted a presentencing investigative interview with Petitioner. Presentence Investigation Report ("PSR") ¶ 51. Probation determined Petitioner's total offense level to be 23 and therefore recommended an advisory guideline imprisonment range of 46 to 57 months, to be served consecutively with a mandatory five year sentence. PSR ¶ 82. In calculating Petitioner's total offense level, Probation first grouped Counts Two, Four, Six, Eight, and Nine under U.S.S.G. § 3D1.2(c) and (d) as "Count Group One" and then determined Petitioner's base line offense level to be 20 based on the determination that Petitioner was a "prohibited person." *Id.* ¶¶ 27, 30. A "prohibited person" includes a person "who is an unlawful user of or addicted to any controlled substance[.]" 18 U.S.C. § 922(g). Next, Probation applied two weapon enhancements for specific offense characteristics: (1) four levels under U.S.S.G. § 2K2.1(b)(1)(B) because the offense involved at least 8 but 24 or less firearms, and (2) two levels under U.S.S.G. § 2K2.1(b)(3)(B) because the offense involved a "destructive device." *Id.* ¶ 31– 32. Lastly, Probation decreased the offense level by three because of Petitioner's acceptance of responsibility, resulting in a total offense level of 23. *Id.* ¶¶ 38–40. With 23 as the total offense level and a Criminal History Category of I, the appropriate sentencing range was 46–57 months. At a sentencing hearing on October 23, 2014, the Court found Probation's recommendation to be appropriate and imposed a sentence of 87 months' imprisonment.

Petitioner now appeals under 28 U.S.C. § 2255 asserting that the calculation of his offense level was erroneous and his counsel provided constitutionally ineffective assistance for failing to object and that, as a result of the error, his plea was not knowing, intentional, and voluntary.

3

## II.    STANDARD OF REVIEW

A prisoner in custody may appeal to the court which imposed the sentence requesting that

the court vacate, set aside, or correct the sentence when "the sentence was imposed in violation

of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255(a). A § 2255 petitioner is

entitled to relief "for an error of law or fact only where the error constitutes a 'fundamental

defect which inherently results in a complete miscarriage of justice.'" *United States v. Eakman*,

378 F.3d 294, 298 (3d Cir. 2004) (quoting *United States v. Addonizio*, 422 U.S. 178, 185

(1979)). The court may dismiss a motion brought under § 2255 where the record shows

conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *see United States v.*

*Day*, 969 F.2d 39, 41–42 (3d Cir. 1992) (discussing a district court's duty when reviewing a §

2255 motion). If the court finds grounds for relief, it "shall vacate and set the judgment aside and

shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may

appear appropriate." 28 U.S.C. §2255(b).

## III.    DISCUSSION

### A.  Petitioner's Waiver of Appellate and Collateral Review

The Government argues that Petitioner waived his right to collaterally attack his sentence

under 28 U.S.C. § 2255. Petitioner's plea agreement contained the following waiver:

> If the Court accepts the recommendation of the parties and imposes the sentence
> stated in paragraph 4 of this agreement, the parties agree that neither will file any
> appeal of the conviction and sentence in this case. Further, the defendant agrees
> that if the Court imposes the recommended sentence he voluntarily and expressly
> waives all rights to collaterally attack the defendant's conviction, sentence, or any
> other matter relating to his prosecution. However, the defendant retains the right
> to file a petition for collateral relief under 28 U.S.C. § 2255 asserting only a claim
> that the attorney who represented the defendant at the time of the execution of this
> agreement and the entry of the defendant's guilty plea provided constitutionally
> ineffective assistance during any part of the representation.

Plea Agmt. ¶ 10, Doc 30.

4

Waivers of rights to appeal and collateral review are valid if entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice. *United States v. Khattak*, 273 F.3d 557, 558 (3d Cir. 2001). "There may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver." *Id.* at 562. The court is to consider several factors to determine if a defendant should be relieved of the waiver: "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" *Id.* at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)) (adopting the First Circuit's approach to determining whether a defendant's waiver may be overcome). Therefore, a court must review the waiver by "specifically examining the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008).

In the present case, Petitioner argues that he did not enter the waiver in his plea agreement knowingly and voluntarily because of ineffective assistance of counsel. Specifically, he contends that counsel failed to identify and object to incorrect offense level calculations that were used to determine his advisory sentencing guideline range. As a result, counsel negotiated a plea that called for a sentence above the advisory guideline range when Petitioner believed he negotiated a plea that called for a sentence below the range. This Court has "an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Mabry*, 536 F.3d at 237–38. If, for example, Petitioner's counsel provided constitutionally ineffective

5

assistance, this would work a miscarriage of justice and it is grounds to override the waiver. *See United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007) ("Enforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [the defendant] from understanding his plea . . . would result in a miscarriage of justice."). As this Court will continue to discuss, however, counsel was not ineffective and the waiver is therefore valid.

## B. Petitioner's Claims of Ineffective Assistance by Trial Counsel

Petitioner alleges that he was denied effective assistance of counsel during negotiations of his plea and in presentence proceedings. In Ground One of Petitioner's § 2255 motion, he alleges that: (1) his attorney failed to object to an erroneous four level offense increase under U.S.S.G. § 2K2.1(b)(1)(B) and a two level offense increase U.S.S.G. § 2K2.1(b)(3)(B), and (2) his attorney was not present during his presentencing interview and consequently did not advise him of the negative consequences of admitting his drug use. This Court finds that Petitioner's ineffective assistance of counsel claims fail because he has not satisfied the *Strickland* test and no miscarriage of justice results.

### 1. Applicable Law

The Supreme Court adopted a two-pronged test for evaluating ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668 (1984). The test requires a petitioner to show that: "(1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different." *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (citing *Strickland*, 466 U.S. at 687). To prove the first prong, also referred to as "deficient performance," a petitioner must show "'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *United States v. Travillion*, 759 F.3d 281,

6

289 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 687). Essentially, "'the defendant must show

that counsel's representation fell below an objective standard of reasonableness' meaning

'reasonableness under prevailing professional norms.'" *Id.* (quoting *Berryman v. Morton*, 100

F.3d 1089, 1094 (3d Cir. 1996)). The court is to "'indulge a strong presumption that counsel's

conduct falls within a wide range of reasonable professional assistance.'" *Id.* (quoting *Berryman*,

100 F.3d at 1094). To establish prejudice, the petitioner must show "'that counsel's errors were

so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting

*Strickland*, 466 U.S. at 687).

The two-prong *Strickland* test also applies to ineffective assistance claims arising out of

the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In the context of a guilty plea, to

satisfy the prejudice requirement, "the defendant must show that there is a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going

to trial." *Hill*, 474 U.S. at 59. A court "need not determine whether counsel's performance was

deficient before examining the prejudice suffered by the defendant . . . [i]f it is easier to dispose

of an ineffectiveness claim on the ground of lack of sufficient prejudice[.]" *Strickland*, 466 U.S.

at 697. The Third Circuit explained that "where defense counsel fails to object to an improper

enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance . . .

[T]he controlling issue is whether defendant suffered prejudice by reason of this failure." *Jansen

v. United States*, 369 F.3d 237, 244 (3d Cir. 2004).

2. *The Six Level Enhancement Under U.S.S.G. §§ 2K2.1(b)(1)(B) and 2K2.1(b)(3)(B)*

The first instance in which Petitioner alleges ineffective assistance of counsel is in regard

to two separate offense level increases that resulted in a six level enhancement under U.S.S.G. §§

2K2.1(b)(1)(B) and 2K2.1(b)(3)(B). Petitioner alleges that his counsel should have objected to

7

these enhancements because any offense level increase for specific characteristics of his offenses is barred by application note 4 of U.S.S.G § 2K2.4 ("Application Note 4"). To evaluate the relevance of this note on Petitioner's offense level calculation, several guideline sections must be considered along with the relatedness of his offenses. For the following reasons, Application Note 4 applies to Petitioner's case, but it has no effect on Petitioner's sentencing. Thus, the six level enhancement for offense characteristics was correctly applied and Petitioner was not prejudiced by counsel's failure to object to the sentencing guideline enhancements.

To evaluate what Petitioner contends was an erroneous four point level increase under § 2K2.1(b)(1)(B) and an erroneous two point level increase under § 2K2.1(b)(1)(B), it is helpful to first summarize the grouping and details of Petitioner's relevant counts for sentencing purposes. Probation grouped Counts Two, Four, Six, Eight, and Nine under U.S.S.G. §3D1.2(c) and (d) as "Count Group One." PSR ¶ 27. The firearm offenses in Counts Eight and Nine called for a higher offense level than the drug offenses so, pursuant to U.S.S.G. §3D1.3(a), the guideline for firearm offenses in U.S.S.G. § 2K2.1 determined the offense level for Count Group One. *Id.* ¶ 28. Count Eight was based on Petitioner's knowing possession of three firearms not identified by a serial number.[1] Indict. at 8. Count Nine was based on Petitioner's knowing possession of five functional IEDs not registered to him in the National Firearms Registration and Transfer Record. *Id.* at 9. Notably, Count Seven—the § 924(c)(1)(A) possession of a firearm in furtherance of a drug trafficking crime—was excluded from Count Group One and was based on Petitioner's

---

[1] Specifically, the firearms listed in Count Eight are described as "one semi-automatic AR-15 type rifle, with no serial number, having a barrel length of approximately 10-1/8 inches (short barreled), loaded with live .223 caliber ammunition," "one Finnish M44 9 x 21mm caliber machine gun, with no serial number, with a 70 cartridge capacity drum magazine," and "[o]ne AR-15 type drop-in auto sear . . . with no serial number." Indict. at 8.

8

possession of three firearms that do not form the basis of either Counts Eight or Nine.[2] PSR ¶ 29;

Indict. at 7.

Petitioner contends that counsel was ineffective for not arguing that U.S.S.G. § 2K2.4

Application Note 4 applies to the conduct in Count Group One. Application Note 4[3] "governs

sentences imposed pursuant to 18 U.S.C. § 924(c)(1)." *United States v. Rios*, 106 F. Supp. 2d

774, 776 (E.D. Pa. 2000), *aff'd*, 80 F. App'x 289 (3d Cir. 2003). Therefore, Application Note 4

applies to Petitioner because he was sentenced on Count Seven pursuant to § 924(c)(1)(A). In

relevant part, Application Note 4 states:

> If a sentence under this guideline is imposed in conjunction with a sentence for an
> **underlying offense**, do not apply any specific offense characteristics for
> possession, brandishing, use, or discharge of an explosive or firearm when
> determining the sentence for the underlying offense. A sentence under this
> guideline accounts for any explosive or weapon enhancement for the underlying
> offense of conviction, including any such enhancement that would apply based on
> conduct for which the defendant is accountable under 1.3 (Relevant Conduct). Do
> not apply any weapon enhancement in the guideline for the underlying offense,
> for example, if . . . the defendant possessed a firearm other than the one for which the
> defendant was convicted under 18 U.S.C. 924(c).

U.S.S.G. § 2K2.4 app. n. 4 (emphasis added). Petitioner reasons that, because he was convicted

under 18 U.S.C. § 924(c), any point level increase for specific offense characteristics for

underlying offenses, allegedly Count Group One, is barred by this note. Petitioner concludes that

his offense level was erroneously increased, resulting in an incorrect sentencing guideline

recommendation. The Government responds by arguing that Application Note 4 does not

---

[2] Specifically, the firearms listed in Count Seven are described as "a Taurus International Model
PT92AF, 9mm luger caliber semi-automatic pistol, serial number TGJ00247, loaded with 16 live rounds,"
"a Heckler and Koch 9mm luger caliber semi-automatic pistol, serial number 14503, loaded with 5 live
rounds," and "an AKM type semi-automatic Romanian rifle, with no serial number and with a barrel
extension, loaded with 22 live rounds of 7.62 x 39mm ammunition."  Indict. at 7.

[3] This note was previously denominated as application note 2 to U.S.S.G. § 2K2.4.

preclude an enhancement for underlying offense characteristics of a § 924(c) conviction and, even if it did, the offense level calculation is still accurate.

Application Note 4 essentially directs courts to "not apply any weapon enhancement in the guideline for the underlying offense" if a defendant was also convicted of a § 924(c) offense. U.S.S.G. § 2K2.4 app. n. 4. To understand the relevance and scope of Application Note 4, it is helpful to review Amendment 599, which amended the note in 2000. Fed. Sent'g Guidelines Manual, App'x C, Amend. 599. The Amendment explains that "no guideline weapon enhancement should be applied when determining the sentence for the crime of violence or drug trafficking offense underlying the 18 U.S.C. § 924(c) conviction, nor for any conduct with respect to that offense for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." *Id.* "Guideline weapon enhancements may be applied, however, when determining the sentence for counts of conviction outside the scope of relevant conduct for the underlying offense." *Id.* The purpose of this amendment is to "(1) avoid unwarranted disparity and duplicative punishment; and (2) conform application of guideline weapon enhancements with general guideline principles." *Id.* Indeed, the Third Circuit found that, if a court sentences a defendant for both a § 924(c) offense and an underlying drug trafficking offense, the court may not also impose an enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm to the underlying drug trafficking offense. *See United States v. Knobloch,* 131 F.3d 366, 372 (3d Cir. 1997).

Although Application Note 4 applies to Petitioner, it only affects sentencing to the extent that he received an enhancement for underlying offenses involving relevant conduct. Therefore, this Court must determine if Count Group One is an underlying offense, under U.S.S.G. § 1B1.3, to Petitioner's § 924(c)(1)(A) possession of a firearm in furtherance of a drug trafficking offense.

10

Section 1B1.3 of the Sentencing Guidelines provides that, unless otherwise specified, base offense levels, specific offense characteristics, and adjustments shall be determined on the basis of "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). For offenses that require grouping of multiple counts, "sentencing shall be determined on the basis of all acts and omissions committed by the defendant 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. West*, 643 F.3d 102, 110–11 (3d Cir. 2011) (citing U.S.S.G. § 1B1.3(a)(2)).

The application notes in the commentary of § 1B1.3 defines a "common scheme or plan" as a criminal plan in which two or more offenses are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 app. n. 5(B)(i). It also defines the "same course of conduct" as offenses that "are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3 app. n. 5(B)(ii). Courts consider three factors in deciding whether offenses form a single course of conduct: "(1) the degree of similarity of the offenses; (2) the regularity (repetitions) of the offenses; and (3) the time interval between the offenses." *West*, 643 F.3d at 111; *see also* U.S.S.G. § 1B1.3 app. n. 5(B)(ii). No single factor is dispositive. *West*, 643 F.3d at 111. "For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity." U.S.S.G. § 1B1.3, app. n. 5(B)(ii).

Petitioner's possession of firearms without serial numbers and possession of unregistered IEDs, which determined the base offense level for Count Group One, are not underlying offenses to his § 924(c)(1)(A) conviction for possession of a firearm in furtherance of a drug trafficking offense. Counts Eight and Nine are not underlying offenses because the firearms and IEDs in Counts Eight and Nine are completely separate from the firearms that make up Count 7.  Further, the offenses comprising Counts Eight and Nine did not occur during the commission of the Petitioner's drug trafficking, they were not undertaken in preparation for Petitioner's drug trafficking, and they were not undertaken in the course of Petitioner's attempt to avoid detection. Rather, the firearms and IEDs included in Counts Eight and Nine were determined to be for personal protection and hobby. PSR ¶ 21; Sentencing Recommendation at 21. The firearms included in Count Seven, by contrast, were found in proximity to marijuana during a search of Petitioner's home. PSR ¶ 14. Counts Eight and Nine are not sufficiently related to the drug trafficking offense to warrant the conclusion that Petitioner's possession of unlawful firearms and IEDs was part of his drug trafficking episode, spree, or ongoing trafficking. Petitioner's sentence enhancements under § 2K2.1(b)(1)(B) and § 2K2.1(b)(3)(B) are therefore not barred by Application Note 4. Accordingly, Petitioner was not prejudiced by trial counsel's failure to object to the specific offense characteristics enhancements and he cannot show that counsel was ineffective in that regard.

### 3. *The Determination that Petitioner is a "Prohibited Person"*

The second instance in which Petitioner alleges ineffective assistance of counsel involves his presentencing interview during which Probation determined that he was a "prohibited person" with a base offense level of 20. Petitioner's base offense level of 20 was determined under U.S.S.G. § 2K2.1(a)(4)(B), which in relevant part states:

12

> 20, if— ... (B) the (i) offense involved a (I) semiautomatic firearm that is capable
> of accepting a large capacity magazine; or (II) firearm that is described in 26
> U.S.C. 5845(a); and (ii) defendant (I) *was a prohibited person at the time the
> defendant committed the instant offense* . . .

U.S.S.G. § 2K2.1(a)(4)(B) (emphasis added).  Application note 3 explains that "for purposes of

subsections (a)(4)(B) . . . , 'prohibited person' means any person described in 18 U.S.C. 922(g)

or 922(n)." U.S.S.G. § 2K2.1 app. n. 3. 18 U.S.C. § 922(g) describes a "prohibited person" to

include someone "who is an unlawful user of or addicted to any controlled substance."

Therefore, to find that Petitioner was a "prohibited person," Probation was required to determine

whether Petitioner was an unlawful user or addicted to any drug or other substance at the time of

his offenses.

Petitioner alleges that his trial counsel was ineffective because counsel was not present

during Petitioner's presentence investigation interview in which Petitioner was questioned about

his drug use. The Government contends that Petitioner's counsel attended the interview, as noted

in the PSR at ¶ 51. Petitioner, however, contends that his counsel did not attend the interview,

pointing to the visitor log from the Federal Detention Center, which showed that his counsel

visited a second inmate the same day.  Petitioner's Reply, Ex. A at 3, 5, Doc. 56. Petitioner

contends that his admissions concerning his drug use affected the calculation of his base offense

level under § 2K2.1(a)(4)(B) and, by extension, the length of his sentence. Therefore, Petitioner

concludes that he was deprived of effective assistance of counsel and prejudiced in sentencing

because of the responses he gave during his presentence interview when his counsel was not

present.

The Sixth Amendment provides a right to effective assistance of counsel at all critical

stages of the proceedings, including prior to trial. *See United States v. Ash*, 413 U.S. 300, 310–11

13

(1973). A presentencing interview, however, is not considered a critical stage so no Sixth

Amendment right to counsel applies. *See Tyler*, 281 F.3d at 96 ("[N]o court has found the Sixth

Amendment right to counsel applies to routine presentence interviews."). Where no right to

counsel exists, a petitioner cannot claim that his counsel performed deficiently as required under

*Strickland. See id.* at 97; *United States v. Eyster,* No. 08-CR-00618, 2014 WL 1464527, at *3

(E.D. Pa. Apr. 13, 2014).

In addition, Petitioner cannot demonstrate that he was prejudiced by his counsel's alleged

deficiency or even his alleged admission. Petitioner claims that had his counsel been present at

his interview, his counsel would have advised him of the consequences of admitting his drug use

and Petitioner would have exercised his Fifth Amendment right to remain silent.  Petitioner

argues that without his admission, he would have been subject to a lower sentencing guideline

range. There is, however, enough evidence other than Petitioner's admission to determine that

Petitioner was a "prohibited person" for sentencing purposes. At sentencing, a court is required

to "apply a preponderance of the evidence standard to all facts relevant to the [Sentencing]

Guidelines[.]" *United States v. West*, 643 F.3d 102, 104–05 (3d Cir. 2011). Petitioner had a long

history of substance abuse including two arrests for controlled substances and several stays at

treatment centers for substance addiction. PSR ¶¶ 48–49, 65–66. This, in addition to Petitioner's

possession of marijuana at the time of his arrest, provided sufficient support for Probation's

determination that Petitioner was a "prohibited person" with a base line offense level of 20.

Because counsel did not perform deficiently and Petitioner was not prejudiced in the

determination of his base line offense level, Petitioner's claim of ineffective assistance based on

counsel's absence at his presentence interview must fail.

14

**C. Petitioner's Claim that His Guilty Plea was Not Knowing, Intentional, and Voluntary**

In Ground Two of Petitioner's § 2255 motion, he claims that his guilty plea was not knowing, intentional, or voluntary because his offense level and sentencing guideline range were improperly calculated. Because this Court finds that Petitioner's offense level and resulting sentencing guideline were correctly calculated, his plea was knowing, intentional, and voluntary and his motion is denied on this ground. Because Petitioner has failed to show either that his counsel was ineffective or that his plea was not knowing, intentional, and voluntary, the waiver in his plea agreement does not work a miscarriage of justice and is effective at barring his claims.

## IV. CONCLUSION

For the reasons explained herein, this Court concludes that Petitioner has not shown that his sentence was imposed in violation of the Constitution or laws of the United States and the waiver of appellate and collateral review contained in his plea agreement is enforceable. Accordingly, this Court DENIES Petitioner's Motion to Vacate, Set Aside, or Correct Sentencing Pursuant to 28 U.S.C. § 2255.